NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIACI SAINT HONORE,<br><br>                              Plaintiff,<br><br>                    v.<br><br>M/V MSC MARIA ELENA, her engines, tackle, appurtenances, etc., *in rem* and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., MEDITERRANEAN SHIPPING COMPANY, S.A., and WEST END EXPRESS CO., INC., *in personam*,<br><br>                              Defendants. | Case No. 21cv04620 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Siaci Saint Honore ("Siaci") filed this suit against M/V MSC Maria Elena ("Ship"), *in rem*, Expeditors International of Washington, Inc. ("Expeditors"), MSC Mediterranean Shipping Company, S.A. ("MSC"), and West End Express Co., Inc. ("West End"), *in personam* (collectively, "Defendants"), seeking recovery for cosmetic product units that were allegedly thieved or pilfered.  Pursuant to Fed. R. Civ. P. 12(b)(6), West End moves to dismiss three claims brought by Siaci in the Amended Verified Complaint in Admiralty ("Amended Complaint") and crossclaims for contribution and indemnification brought by MSC.  D.E. 47-1.  The Court decides this motion on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b).  For the reasons set forth below, West End's motion will be **GRANTED**.

I.      **BACKGROUND**[1]

Siaci, a subrogee[2] of Kendo Holdings, Inc., filed this action to recover the value of a shortage of 11,340 missing product units lost in a cosmetics shipment from Italy to New Jersey. *See* D.E. 32 "Amended Complaint" ¶ 19.  Expeditors is a licensed Customs Broker that is typically hired to perform services for cargo importers and owners to facilitate cargo imports into the United States that comply with government import regulations.  *Id.* ¶¶ 7-8.  MSC is a vessel operating common carrier.  *Id.* ¶ 9.  West End is a motor carrier that operates trucking services for import shipments.  *Id.* ¶ 10.  Expeditors, MSC, and West End were all engaged to facilitate the transportation of the cosmetic shipment at issue here from Italy to New Jersey.

On or about April 18, 2020, Expeditors issued or caused to be issued a sea waybill[3] numbered 6400181058 ("Sea Waybill"), which provided for the transport of 533 cartons of cosmetics ("Cosmetics Shipment") stowed in a sealed shipping container numbered TCNU7165008.  *Id.* ¶ 14.  The Sea Waybill provided that the Cosmetics Shipment be loaded aboard the Ship in Genoa, Italy on that same date for transport to New York and subsequent discharge and delivery from the Port of New York & New Jersey.  *Id.*  On OR ABOUT April 19, 2020, MSC also issued or caused to be issued a bill of lading[4] numbered MEDULN240832 ("Bill

---

[1] The facts in this section are taken from the well-pled allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "Subrogation" is "the substitution of the insurer in place of the insured for the purpose of claiming indemnification from a third person for the loss covered by insurance."  E. Patterson, Essentials of Insurance Law, 147, 148 (2d ed. 1957).  As subrogee, Siaci has the authority to act in the name of the subrogated insurer and interested cargo underwriters of the subject cargo and is entitled to maintain this action on behalf of the shipper, consignee and/or owner of the subject cargo. Amended Complaint ¶ 6.

[3] A waybill is "[a w]ritten document made out by [the] carrier listing point of origin and destination, consignor and consignee, and describing goods included in shipment[.]" Black's Law Dictionary 1429 (5th ed. 1979).

[4] A bill of lading is "[a] basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers."  *S. Pacific Transp. Co. v.*

of Lading") for the transport of the Cosmetics Shipment. *Id.* ¶ 15.  The Bill of Lading provided that the Cosmetics Shipment: was received in alleged good order, condition, and quantity in Genoa, Italy; was loaded aboard the Ship in Genoa, Italy; was transported on the Ship from Genoa, Italy to the Port of New York & New Jersey; arrived and was discharged at the Port of New York & New Jersey on May 5, 2020; and was delivered to Port Elizabeth, New Jersey on May 10, 2020. *Id.*  For the Cosmetics Shipment to clear United States' Customs, and be discharged from Port Elizabeth, New Jersey, Expeditors issued and/or obtained a carrier's release order. *Id.* ¶ 17.  This would allow for West End to receive and effect delivery of the Cosmetics Shipment. *Id.*

On May 12, 2020, West End received the Cosmetics Shipment from Port Elizabeth, New Jersey by truck and delivered the same on that same date to: XPO Logistics in Monroe Township, New Jersey. *Id.* ¶ 18.  As the distributor for Siaci's insured, XPO Logistics unloaded and tallied the contents of the Cosmetics Shipment during which time XPO Logistics determined there was a shortage of 11,340 missing product units from the Cosmetics Shipment. *Id.* ¶ 19.  The value of the missing product units is estimated to be $53,071.55. *Id.* ¶ 23.  The missing product units are alleged to have been thieved or pilfered at some point while in transit from Italy to New Jersey, but before receipt by XPO Logistics. *Id.* ¶ 19.

Siaci brings four claims against Defendants: "Count One – Breach of Contract;" "Count Two – Negligence;" "Count Three – Breach of Bailment;" and "Count Four – Conversion." *Id.* ¶¶ 21-35.  Siaci seeks the value of the missing product units, $53,071.55, as relief. *Id.* ¶¶ 23, 27, 31, 35.

---

*Commercial Metals Co.*, 456 U.S. 336, 342 (1982) (internal citation omitted).  "[T]he bill of lading is a title document, while the waybill describes the freight, its route, and the carriers involved in its shipment. The waybill accompanies the freight throughout the shipment and into the hands of the destination carrier." *CSX Transp. Co. v. Novolog Bucks County*, 502 F.3d 247, 251 n. 4 (3d Cir. 2007) (internal citation and quotation marks omitted).

In its answer to the Amended Complaint, MSC brings crossclaims against Expeditors and West End seeking contribution and indemnification.  D.E. 6 ¶ 28.

West End now moves to dismiss "Count Two – Negligence," "Count Three – Breach of Bailment," and "Count Four – Conversion" from the Amended Complaint, as well as MSC's contribution and indemnification crossclaims.  D.E. 47-1 "Mot." at 1.  Being fully-briefed, the Court decides this motion.

## II.      STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).  Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  A reviewing court is not to give credit to a complaint's "bald assertions" or "legal conclusions." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  In weighing a motion to dismiss, a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 556 U.S. at 684.

4

The same analysis applies with respect to a motion to dismiss a crossclaim filed pursuant to Fed. R. Civ. P. 12(b)(6).  *See Merchants Mut. Ins. Co. v. 215 14th St., LLC*, Civ. No. 19-9206, 2020 U.S. Dist. LEXIS 23664, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020).

## III.     DISCUSSION

### A.     Scope of the FAAAA's Preemption Clause

To understand the scope of federal preemption of state law pursuant to the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 108 Stat. 1605-06, it is helpful to first understand how preemption functions.  Generally, federal law preempts state law when either: (1) a congressional statute explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that one can reasonably conclude that Congress left no room for state regulation in that field.  *See Cipollone v. Liggett Group, Inc.*, 506 U.S. 504, 523 (1992).  A presumption against preemption exists.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (holding that federal laws do not supersede traditional state police powers unless Congress clearly intends to do so).

In 1980, Congress deregulated interstate trucking to encourage rates and services be set by the market rather than by government regulation.  *See* Motor Carrier Act of 1980, 94 Stat. 793. Then, in 1994, Congress bolstered this effort by including a specific provision in the FAAAA that expressly provides for preemption of state regulation of the trucking industry, 49 U.S.C. § 14501(c)(1).  That specific provision provides that states "may not enact or enforce a law, regulation, or other provision [] related to a price, route, or service of any motor carrier [] with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

The overarching goal of preemption pursuant to the FAAAA is to avoid situations where "state requirements could easily lead to a patchwork of state service-determining laws, rules and

regulations." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008).  The Supreme Court

has outlined the following four guiding principles for applying preemption pursuant to the

FAAAA:

> (1) state enforcement actions having a connection with, or reference to
> carrier rates, routes, or services are preempted; (2) preemption may occur
> even if a state law's effect on rates, routes, or services is only indirect; (3)
> with respect to preemption in this context, it makes no difference whether a
> state law is consistent or inconsistent with federal regulation; and (4)
> preemption occurs at least where state laws have a significant impact related
> to Congress's deregulatory and preemption-related objectives.

*Id.* at 370 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992))

(interpreting identical provision in Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1))

(quotation marks omitted).

With these guiding principles in mind, the scope of federal preemption pursuant to the

FAAAA is understood as broad and encompasses even state laws that only have an indirect effect

on the price, route, or service of a motor carrier.  *Id.*  In *Dan's City Used Car, Inc. v. Pelkey*, 569

U.S. 251, 261 (2013), the Supreme Court concluded that the term "transportation" in the FAAAA

even includes the storage and handling of goods when those services are "related to the movement"

of property.  Taking one step further, courts have even found that the FAAAA preempts not only

state statutes and administrative regulations, but also state law-based private claims, such as

negligence, conversion, and breach of bailment, because such claims fall under the "other

provisions with the force of law" language of the provision.  *See, e.g.*, *Alpine Fresh, Inc. v. Jala

Trucking Corp.*, 181 F. Supp. 3d 250, 257 (D.N.J. 2016) (dismissing breach of bailment and

negligence claims because the FAAAA expressly preempts these state common law claims); *AMG

Res. Corp. v. Wooster Motor Ways, Inc.*, 2019 U.S. Dist. LEXIS 6747, 2019 WL 192900, at *4

(D.N.J. Jan. 4, 2019) (finding that state common law claims, including those for conversion and

negligence, are preempted by the FAAAA), *aff'd*, 796 F. App'x 96 (3d Cir. 2020); *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998); *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997).

But the FAAAA's scope does have some limits.  It will not preempt state laws that merely affect carrier prices, routes, or services in a "tenuous, remote, or peripheral [] manner." *Rowe*, 552 U.S. at 371.   Additionally, the FAAA contains a few narrow statutory exceptions, where preemption will not occur.  Lastly, courts have consistently found that the FAAAA does not preempt routine breach of contract claims because they only seek enforcement of "privately ordered obligations" and as such do not amount to state-imposed laws, rules, or other provision having the effect of law.  *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29, 233 (1995) (concluding that a breach of contract claim was not preempted, in the context of the ADA (which the FAAAA's language mirrors and courts interpret similarly), because "[a] remedy confined to a contract's terms simply holds parties to their agreements"); *see also Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, 2017 U.S. Dist. LEXIS 142926, at *6 (D.N.J. Sept. 5, 2017) (declining to dismiss breach of contract claim because the FAAA does not preempt routine breach of contract claims) (citations omitted).

Here, West End asserts that the FAAAA preempts all but one claim[5] brought by Siaci: "Count Two – Negligence," "Count Three – Breach of Bailment," and "Count Four – Conversion." Mot. at 1.  Under similar reasoning, West End asserts that the FAAAA also preempts MSC's crossclaims for contribution and indemnification.  *Id.*  In light of the FAAAA's broad scope, the Court agrees with West End.

---

[5] West End does not move to dismiss "Count I – Breach of Contract."

**B.** **Counts Two, Three, and Four of the Amended Complaint are Preempted by the FAAAA**

The Court first addresses West End's contention that the FAAAA preempts Siaci's state law-based negligence, breach of bailment, and conversion claims.  If those claims are preempted by the FAAAA, then they should be dismissed.  For the reasons that follow, the Court agrees with West End.

In support of its position that the FAAAA's preemptive authority is sufficiently broad to encompass three of Siaci's claims against it, West End cites to a series of persuasive cases in which courts concluded that the FAAAA preempts state law-based claims of, *inter alia*, negligence, breach of bailment, and conversion.  In each case, one party brings claims arising from the transportation of goods against the motor carrier (*e.g.*, truck) responsible for such transportation. *See Assicurazioni Generali v. Harbor Freight Transp. Corp.*, 2021 U.S. Dist. LEXIS 71935 (D.N.J. Apr. 14, 2021) (finding that the FAAAA preempted negligence and breach of contract claims brought by Italian-based seller of goods against trucking and warehouse company that was hired to transport aircraft parts from Port Elizabeth, New Jersey to a New Jersey warehouse for one leg of the aircraft parts eventual shipment to Canada, but where shipment was damaged); *see also Mrs. Ressler's Food Prods. v. KZY Logistics, LLC*, 2017 U.S. Dist. LEXIS 143255 (D.N.J. Sept. 5, 2017) (finding that the FAAAA preempted unjust enrichment claim brought against broker of motor carrier services that was hired to help coordinate the transport of products from Pennsylvania to California, but where shipment was damaged).  In every case the courts found that the state law-based claims at issue sufficiently "related to" a motor carrier's price, route, or service with respect to the "transportation of property," such that the FAAAA was implicated, and the state law-based claims were necessarily preempted.

In rebuttal, Siaci does not directly address whether the FAAAA preempts its state law-based negligence, breach of bailment, and conversion claims against West End.  Instead, Siaci raises two arguments that appear to miss the point.

First, Siaci asserts that the cases West End cites to are governed by the Carmack Amendment, rather than the FAAAA.  But the Carmack Amendment is only implicated in "interstate-shipping contract [and tort] claims alleging loss or damage to property."  *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. Of Am., Inc.*, 762 F.3d 332, 336 (3d Cir. 2014).  Here, West End was involved only in an intrastate shipment from Port Elizabeth, New Jersey to XPO Logistics's warehouse in Monroe Township, New Jersey.  D.E. 49 "Siaci Opp'n" at 4-5.  West End asserts only that the FAAAA applies and the cases it cites to support that proposition.  Analysis of just two cases, *Mrs. Ressler's Food Prods.* and *Assicurazioni Generali*, makes it clear that Siaci's interpretation of West End's cited cases is misleading.

With respect to *Mrs. Ressler's Food Prods.*, while it is true that the case involved an interstate shipment of food products from Pennsylvania to California and that the court dismissed the manufacturer's breach of contract and negligence claims brought against the two motor carriers because the claims were preempted by the Carmack Amendment, Siaci omits a couple of important facts.  First, the court *sua sponte* dismissed the breach of contract and negligence claims finding that they were preempted by the Carmack Amendment, but these claims were not raised in the pending motion before the court.  *See* 2017 U.S. Dist. LEXIS 143255, at *12-13.  Second, the actual pending motion was a motion to dismiss, brought by a broker, third-party defendant, asserting that the FAAAA and ICCTA preempted the third-party plaintiff's unjust enrichment claim, which the court did in fact grant.  *Id*.  Thus, Siaci's argument implying that the FAAAA did

not apply in *Mrs. Ressler's Food Prods.*, because the court *sua sponte* found that the Carmack Amendment also applied, is misplaced.

With respect to *Assicurazioni Generali*, where the pending motion before the court was one brought by a motor carrier that was involved solely in the intrastate leg of an ultimately international shipment of goods, the court found that the FAAAA preempted the breach of bailment claim brought by an Italian-based seller of goods. *See* 2021 U.S. Dist. LEXIS 71935, at *2-5. Notably, like here, the motor carrier moved to dismiss the negligence claim brought against it, but the court did not ultimately need to address the argument that the negligence claim was also preempted by the FAAAA because the Italian-based seller of goods conceded as to that argument. *Id.* at *5. Siaci, again, mischaracterizes this case as being one governed by the Carmack Amendment, to the exclusion of the FAAAA, by quoting a portion of the court's reference to a Second Circuit case concerning the Carmack Amendment. But what Siaci leaves out is the sentence in the court's opinion immediately following that reference: "[t]he instant case involves another piece of comprehensive federal legislation, the FAAAA, which also [like the Carmack Amendment] directly addresses the issue of a shipper's compensation for injury to its property." *Id.* at *4. In other words, the court mentioned the Carmack Amendment in support of its proposition that courts should be reluctant to supplement comprehensive federal legislation with common law, like the FAAAA, but not for the proposition that its ultimate decision was grounded in the Carmack Amendment.[6]

---

[6] Siaci incorrectly states that the court in *Assicurazioni Generali* further explained its reference to the Carmack Amendment in a stay ordered later in the proceedings. *See* Siaci Opp'n at 4. The context of that stay involved a party seeking to intervene in the case, and in turn, if successful with its intervention, to stay the proceedings, because it was involved in liquidation proceedings in South Carolina. *See Assicurazioni Generali v. Harbor Freight Transp. Corp.*, 2022 U.S. Dist. LEXIS 11225, at *4-9 (D.N.J. Jan. 21, 2015) (granting motion to intervene and "[i]n the interest of facilitating a uniform and orderly liquidation process, the Court will stay the present action pending the liquidation proceedings in South Carolina.").

Additionally, the motor carrier moving to dismiss in *Assicurazioni Generali* was involved only in the intrastate leg of the shipment at issue. Thus, Siaci's attempt to mischaracterize and distinguish this case as one involving only an interstate shipment is futile. Instead, the Court finds this case persuasive to West End's position.

Next, Siaci argues that state law-based claims for injury to persons or property are not preempted because there is no federal legislation expressly authorizing such preemption in cases limited to intrastate transportation of property. Siaci Opp'n at 5. Specifically, Siaci questions Congress's intent to preempt "local motor truck carriage relating to cargo loss and damage[.]" *See id.* at 6. West End responds that the question of whether the FAAAA preempts state law-based non-contractual claims against motor carriers and brokers involving both intrastate and interstate shipments is well-settled. D.E. 50 "Reply" at 4. For support, West End cites to a series of cases from sister courts reinforcing its proposition that the FAAAA preempts state law-based non-contractual claims in cases involving damage to goods that were shipped in intrastate and interstate shipping. *See, e.g.*, *Luccio v. UPS, Co.*, 2017 U.S. Dist. LEXIS 13069, at *4-5 (S.D. Fla. Jan. 31, 2017) (finding that FAAAA preempted plaintiff's negligence claim against UPS for mishandling of cryopreserved embryos in intrastate shipment across Florida, as well as that "case law and statutory interpretation support the conclusion that the FAAAA was intended to apply to intrastate as well as interstate shipping unless otherwise exempted."). The Court agrees with its sister courts, and thus, West End.

Additionally, the Court finds it notable that the specific provision providing for preemption pursuant to the FAAAA is titled, "Federal Authority over Intrastate Transportation," 49 U.S.C. § 14501(c)(1). The Court will not ignore such a clear expression by Congress to preempt certain state law-based claims. Thus, the Court concludes that the FAAAA applies to the intrastate

transportation of property by motor carriers, which is directly at issue with respect to West End here.  Accordingly, Siaci's state law-based negligence, breach of bailment, and conversion claims against West End are preempted by the FAAAA.

The Court notes that at least one of the nonmoving defendants is not a motor carrier or broker of motor carrier services within the meaning of the FAAAA.  As such, the FAAAA does not necessarily preempt Siaci's state law-based non-contractual claims against all defendants.  But because the distinct counts alleged in the Amended Complaint do not differentiate between the motor carrier- and non-motor carrier-defendants, the Court will dismiss the state law-based negligence, breach of bailment, and conversion claims as to all defendants without prejudice.

**C.     MSC's Crossclaims are Preempted by the FAAAA**

The Court next addresses West End's contention that the FAAAA preempts MSC's state law-based contribution and indemnification crossclaims, and as such those claims should be dismissed.  MSC raises two primary arguments against FAAAA preemption of its contribution and indemnification crossclaims against West End.[7]  For the reasons that follow, the Court agrees with West End.

*1.     Federal maritime law does not apply to MSC's crossclaims*

First, MSC argues that its crossclaims are premised on federal maritime law rather than state law.  MSC Opp'n at 3.  West End responds that MSC fails to provide any legal authority upholding the proposition that federal maritime claims apply against a motor carrier for alleged damages sustained to cargo during its transportation.  Reply at 5-6.

---

[7] MSC makes two additional passive arguments: additional discovery is needed to determine if there is a contractual contribution or indemnification claim; and references to the Carmack Amendment and other federal law preemption cases are irrelevant.  *See* D.E. 48 "MSC Opp'n" at 8-10.  Because the Court dismisses MSC's counterclaims based on the federal maritime law and FAAAA preemption arguments, and does so without prejudice, then the Court need not reach these two additional arguments.

To properly address MSC's first argument, the Court will outline the scope of federal maritime jurisdiction.  Maritime-based claims for contribution and indemnification may be grounded in either contract or tort law in limited circumstances.  The Court ultimately concludes that MSC's contribution and indemnification crossclaims fall outside the scope of federal maritime jurisdiction.

First, "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 22-23 (2004) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).  "[S]o long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce – and thus it is a maritime contract," regardless of whether "it also provides for some land carriage." *Id.* at 27.  The specific federal law that then governs the contract interpretation is the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30702(a); *see also Norfolk S. Ry. Co.*, 543 U.S. at 29 ("COGSA governs bills of lading for the carriage of goods from the time when the goods are loaded on to the time when they are discharged from the ship.").  But, while COGSA may govern the "land carriage" portion of an ultimately international shipment, involving primarily "sea carriage," it only does so where the parties specifically stipulate that it does in a maritime contract. *Norfolk S. Ry. Co.*, 543 U.S. at 29.

Here, MSC issued or caused to be issued a bill of lading, which provided for the "substantial carriage of goods by sea" because the Cosmetics Shipment was to be, and in fact was, transported by sea from Genoa, Italy to the Port of New York and New Jersey, and later delivery to the Port of Elizabeth, New Jersey.  *See* Amended Complaint ¶ 15.  But because the last leg of the shipment was local, as it was confined to New Jersey, and did not involve "sea carriage," as it involved the transportation of the Cosmetics Shipment via truck, federal maritime law presumably

13

does not apply to the crossclaims against West End, who was only involved in that last leg of the shipment. This presumption would be overcome and the relevant federal maritime law, COGSA, would apply to West End, if it was shown that the parties specifically stipulated to that in a maritime contract. Here, neither the Amended Complaint nor MSC's crossclaims plead that any maritime contract existed that specifically extended the scope of the COGSA to West End's local portion of the ultimately international shipment. Additionally, there is no indication in the pleadings that MSC and West End had any sort of contractual relationship with each other, such that MSC's crossclaims against West End would fall within the scope of federal maritime law.

But federal maritime law may apply and allow a noncontractual contribution or indemnification action to lie where parties do not have a contractual relationship if the action is derived from an underlying maritime tort. *See, e.g.*, *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969) (finding that maritime law governed noncontractual indemnification claim because underlying tortious conduct occurred in navigable waters); *White v. Johns-Manville Corp.*, 662 F.2d 243, 247 (4th Cir. 1981) (finding that tort occurring on navigable water is a maritime claim). "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Neely v. Club Med Management Servs.*, 63 F.3d 166, 178-179 (3d Cir. 1995) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 554 (3d Cir. 1995)).

"For tort claims, the locality test requires that 'the tort occurred on navigable water or…injury suffered on land was caused by a vessel on navigable water." *Id.* (citation omitted). The maritime connection requires determining whether: (1) the "general features of the type of incident involved to determine whether the incident has a potentially disrupting impact on

maritime commerce[;]" and (2) the "general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."  *Id.* (citation omitted).

Here, MSC's contribution and indemnification crossclaims are claims based in tort law. But they did not occur on "navigable water" nor were they "caused by a vessel on navigable water," and as such cannot satisfy the locality test for classification as a "maritime tort."  The Court notes that both cases MSC cites in support of its position involve torts that either occurred on navigable water or on land caused by a vessel on navigable water.  *See Cooper Stevedoring Co. v. Kopke*, 417 U.S. 106 (1974) (concluding that longshoreman injured on a ship at sea could recover from negligent stevedore in a direct action and shipowner and charterer were properly granted contribution from negligent stevedore as they were entitled to same right of recovery as longshoreman); *see also Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404 (1969) (allowing maritime tort claim to lie where longshoreman fell into an unprotected deep tank opening and was killed while readying a vessel for its grain cargo).

Additionally, MSC's crossclaims do not satisfy the required "maritime connection" because at best the crossclaims have only a tenuous maritime connection: the Cosmetics Shipment was shipped overseas from Italy to the United States.  Maybe the maritime connection would be less tenuous if the parties were certain that the cargo was lost at sea because the events giving rise to the tort claims would at least have occurred at sea, but the Court will not indulge such speculation.  As such, the Court finds that MSC's contribution and indemnification crossclaims are not maritime torts falling within the scope of federal maritime law.

2.       *MSC's crossclaims are preempted by the FAAAA*

Alternatively, MSC argues that even if its crossclaims were premised on state law that there would still be no valid basis for preemption pursuant to the FAAAA.  MSC Opp'n at 4.  The

Court's analysis with respect to Siaci's state law-based non-contractual claims against West End, *supra* Section III.B., also applies with respect to MSC's contribution and indemnification crossclaims because they are also state law-based non-contractual claims, which are preempted by the FAAAA. *See Peening Techs. Equip., LLC v. Northeast Riggers, Inc.*, 2022 Conn. Super. LEXIS 54, at *5-6 (Conn. Supp. Jan. 10, 2022) (concluding that the FAAA preempted indemnification claim seeking damages relating to transportation of machine to customer because the "claim is aimed at the core of [the motor carrier or broker's] services, arranging for the movement of goods[.]"); *see also Custom Stud, Inc. v. Meadow Lark Agency, Inc.*, 566 F. Supp. 3d 950, 954-956 (D. Minn. 2021) (finding that all counterclaims, including those for contribution and indemnification, derived from alleged actions leading up to or following the transportation of property based on party's motor carrier services as a broker and all require enforcement of state law, such that Congress intended their preemption pursuant to the FAAAA).[8]

In *Tokio Marine Am. Ins. Co. v. Jan Packaging*, 2020 U.S. Dist. LEXIS 240798, at *3-4 (D.N.J. Dec. 18, 2020), multiple parties agreed to facilitate and transport the shipment of electronic equipment, by motor and sea carrier, from California to China. Some of the equipment was damaged upon arrival in New Jersey, which resulted in the filing of claims and crossclaims by different parties. *Id.* One of the motor carriers involved in the transport of the equipment from Massachusetts to New Jersey, Jan Packaging, filed crossclaims against the other motor carriers involved in that same leg of the shipment, including for contribution and indemnification. *Id.* One of the other motor carriers, MTS, moved to dismiss, *inter alia*, Jan Packaging's contribution and

---

[8] The Court notes that further analysis would have been required here if MSC and West End had a direct contractual relationship because the FAAA does not preempt routine breach of contract claims. As pled, MSC's crossclaims do not allege a contractual relationship between MSC and West End, and therefore, the Court will not assume that its crossclaims arise out of a contract and fall outside the ambit of the FAAAA.

indemnification crossclaim. *Id.* MTS argued that the FAAAA expressly preempted that crossclaim. *Id.* at \*14-15. The court agreed with MTS and concluded that the crossclaim (like the separate negligence crossclaim) "relate[d] to motor carrier services that gave rise to this action and [is] therefore preempted by the FAAAA." *Id.* at \*15-16. Specifically, the court reasoned that Jan Packaging's contribution and indemnification crossclaim hinge on the alleged negligence of MTS, because "Jan Packaging alleges that, in the event it is held liable to [the plaintiff] for any loss or damage to the equipment, such liability was caused or brought about the acts or omissions of MTS." *Id.* at \*16-17. It follows that because the contribution and indemnification crossclaim was premised on the acts or omissions giving rise to a state law-based claim, negligence, that was preempted by the FAAAA, then the crossclaim was also necessarily preempted by the same. *See id.* Thus, the court dismissed both the negligence and contribution and indemnification crossclaims brought against Jan Packaging. *Id.* at \*17.

The reasoning in *Tokio Marine Am. Ins. Co.* is guiding here. MSC's contribution and indemnification crossclaims against West End arise, not from a contractual relationship between the two parties, but rather from acts or omissions that also gave rise to Siaci's negligence, breach of bailment, and conversion claims. Because those claims brought by Siaci are preempted by the FAAAA, as to West End, then the acts or omissions that gave rise to those claims also cannot serve as the basis for any crossclaims brought against West End. MSC's contribution and indemnification crossclaims attempt to do just that. *See id.* at \*14-15 (citing *Nature's One, Inc. v. Spring Hill Jersey Cheese, Inc.*, 2017 U.S. Dist. LEXIS 160888, at \*5-8 (S.D. Ohio Sept. 29, 2017), where court concluded "because the plaintiff's [contribution and indemnification] claims alleged negligence in the carrier's performance of its services, they were preempted under the 'expansive' scope of the FAAAA as relating 'to a price route, or service of *any motor carrier*.'")

(emphasis in original) (internal quotation omitted).  Thus, MSC's crossclaims are also preempted by the FAAAA.

Accordingly, MSC's state law-based crossclaims will be dismissed without prejudice.

**IV.     CONCLUSION**

For the reasons stated herein, West End's motion to dismiss will be **GRANTED**.  As such, "Count II − Negligence," "Count III − Breach of Bailment," and "Count IV − Conversion," contained in the Amended Complaint, as well as MSC's crossclaims for contribution and indemnification will be **DISMISSED** *without prejudice*.  An appropriate Order accompanies this Opinion.

Dated: November 14, 2022

_____
Hon. Evelyn Padin, U.S.D.J.